# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN, TEXAS

Honorable Benton Coopwood
District Attorney
Travis County
Austin, Texas

Dear Sir:

Opinion No. 0-5611
Re: Whether publication of maximum
commodity prices fixed by Office
of Price Administration is viola-
tive of anti-trust laws and
related questions.

A newspaper publisher in a wet area of Travis County has been tendered a whiskey
advertisement by a distiller. In addition to an illustration of the product and
other descriptive matter the advertisement is captioned "O. P. A. Ceiling Prices".
This is followed with the representation in effect that under Regulation M. P. R.
#445, the ceiling prices fixed by the Office of Price Administration on this
product are among others, $2.00 for a pint of bottled-in-bond whiskey and $1.81
for a pint of 93 proof whiskey.

You confirm the representations of fact made in the proposed advertisement by
stating that the maximum prices so included were in fact determined by the Office
of Price Administration pursuant to the terms of its Maximum Price Regulation
No. 455, issued August 9, 1943 and became effective on August 14, 1943.

Upon your statement of the matter, as above outlined, you desire to be advised
whether acceptance and publication of the advertisement would be violative of the
anti-trust or any other laws of the state.

As we view the matter there is an incidental and an ultimate question of law
involved in deciding the answer to your inquiry. The incidental question concerns
the power of Congress, under the circumstances, to fix the maximum prices of
commodities in this state. The Emergency Price Control Act of 1942 is an
emergency war measure. In the interest of the national defense and security and
for the purpose of making effective the prosecution of the present war, the
President is given extraordinary powers to stabilize prices. These powers are to
terminate on June 30, 1944. Title 50, App. Section 901, U. S. C. A.

Section 902 specifically authorizes the President, through the Price Administrator,
by regulation or order, to establish such maximum commodity prices as in his
judgment will be fair and equitable and as will effectuate the high purposes of the
act. There is ample authority under the Federal Constitution for the exertion
by the Congress and the President of such of the nation's war powers as fixing
commodity prices.

The Congress passed a similar law, known as the Lever Act, that was in force during
World War I. It empowered the President, as does the present law, to fix commodity
prices. Under its terms the President fixed the price of $3.00 per ton for coal
at the mines. The validity of the President's order was questioned in Highland v.
Russell Car & Snow Plow Co., 279 U. S. 601; 73 L. Ed. 688.

In that case the Supreme Court of the United States said;

"Under the Constitution, and subject to the safeguards there set for the protection of life, liberty and property . . . , the Congress and the President exert the war power of the nation, and they have wide discretion as to the means to be employed to carry on . . . . The measures here challenged are supported by a strong presumption of validity, and they may not be set aside unless clearly shown to be arbitrary and repugnant to the Constitution . . . . The principal purpose of the Lever Act was to enable the President to provide . . . . things necessary to prosecute the war. As applied to the coal in question, the statute and executive orders were not . . . . repugnant to the due process clause of the 5th Amendment."

We think under the reasoning of that high authority there surely is at least as much warrant in 1943 for an executive order fixing the maximum price of a pint of bottled-in-bond whiskey at $2.00 as there was in 1917 for fixing the price of a ton of coal at $3.00. Now, as then the appropriate agency having acted presumptively in accordance with the act of Congress, its order is the supreme law of the land on this subject.

Since, under your statement of the case, the price in question is fixed by law and it is proposed by the affected parties to accept and publish the same as such, it is difficult to perceive how such an act would contravene the laws of Texas prohibiting trusts and conspiracies against trade. The price here is fixed, not by any agreement or understanding between those engaged in the liquor business or between them and the publisher as is denounced by Chapter 3, of Title 19, V. P. C. of Texas, but is fixed and imposed upon them by the President of the United States, pursuant to the act of the Congress. And so long as such an advertisement is prepared, accepted and published under circumstances where it is innocent or free of any agreements, arrangements or conspiracies within the maximum range of prices fixed by executive authority to accomplish any unlawful purpose denounced by the anti-trust laws of Texas, it may be done without the parties being subject to criminal prosecution upon that ground.

While the acts you describe do not suggest a violation of law, we think it appropriate to quote from a statement of policy made by the Attorney General of Texas on May 28, 1942, upon the subject of the relation of Federal war measures to the Texas anti-trust laws. Among other things he declared:

"Many of the recent orders and authorized conservation programs of the War Production Board, the Office of Defense Transportation, and other Federal agencies, while designed solely for the purpose of furthering the conduct of the war, are in direct conflict with the anti-trust laws of Texas, inasmuch as they authorize agreements which will reduce competition in the production, distribution and sale of commodities and services. But when such orders and authorized programs are promulgated by virtue of executive order of the President, issued under authorization of Federal law in view of the war emergency, this Department will not interfere with legitimate agreements made and used for the sole purpose of complying with such orders and authorizations. We adhere and subscribe to the doctrine that 'the power of Congress in the emergency of war is supreme, and local laws must yield when they conflict with it.'

"But the anti-trust laws of this State are still in force insofar as they do not conflict with war emergency measures adopted by the Federal Government. And no group of persons is authorized to use the conservation of tires, transportation, or any other essential commodity or service, as a cloak for a conspiracy to restrain competition in any way which is prohibited

By such laws, and is not directly related to the conservation of such commodities and services. The legality of the plan and operation of any industrial conservation program will depend upon whether, as designed and put into effect, it exists for the sole purpose of complying with Federal war emergency regulations, or in fact includes unreasonable restraints upon trade not related to the conservation program. Particular care should be exercised to see that such a program does not operate to work a practical exclusion of any competitor from access to the market, nor place unnecessary restrictions on sales efforts, nor deliberately handicap one consumer or group of consumers for the benefit of another."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (Signed)
Elbert Hooper
Assistant

EH:FO
EH:pm

APPROVED SEPTEMBER 21, 1943

GERALD C. MANN

ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion
Committee
By___BWB___
Chairman